Rubin Uslander and Genevieve Uslander v. Commissioner.
Uslander v. Commissioner
Docket No. 61225.
United States Tax Court
T.C. Memo 1958-212; 1958 Tax Ct. Memo LEXIS 14; 17 T.C.M. (CCH) 1056; T.C.M. (RIA) 58212; December 15, 1958
*14 Evidence is reviewed and it is held petitioner Rubin Uslander failed to discharge his burden of establishing by credible evidence that he made loans to a corporation which were the subject of a bad debt deduction in his 1948 income tax return in the amount of $38,033.33. Samuel S. Saiber, Esq., 11 Commerce Street, Newark, N. J., for the petitioners. Henry L. Glenn, Esq., for the respondent. MULRONEY Memorandum Finding of Facts and Opinion MULRONEY, Judge: The respondent determined a deficiency in income tax of the petitioners for the year 1948 in the sum of $10,468.64. The questions presented are: 1. Did Rubin Uslander make loans to Distillers Factors Corporation in 1946 totaling $38,033.33? 2. If a debt was created in 1946 in the amount of $38,033.33, *15 did it become worthless in the taxable year 1948, or in some other year within the meaning of section 23(k), Internal Revenue Code of 1939? 3. If there was a debt and it became worthless in 1948, was it a business bad debt or a non-business bad debt within the meaning of section 23(k), Internal Revenue Code of 1939? 4. If any funds were advanced by Rubin Uslander to Distillers Factors Corporation for some purpose other than a loan, did Rubin Uslander incur any loss in a transaction entered into for profit or in a trade or business carried on by Rubin Uslander within the meaning of section 23(e), Internal Revenue Code of 1939? Findings of Fact Rubin and Genevieve Uslander are husband and wife who live in Elizabeth, New Jersey. They filed their joint income tax return for the year 1948 with the then collector of internal revenue for the fifth district of New Jersey. Genevieve Uslander is a petitioner by virtue of the joint return but hereafter the term "petitioner" will be used to indicate Rubin Uslander. Petitioner is a certified public accountant in the active practice of his profession since 1930 in Elizabeth, New Jersey, with a partner named Morris Tarlowe. Late in 1945 *16 or early in 1946 petitioner's accountancy firm became accountants for Distillers Factors Corporation of Elizabeth, New Jersey, hereinafter sometimes referred to as Distillers. The business of Distillers was that of dealing in warehouse receipts for whiskey. An involuntary petition was filed on November 17, 1947 in the Chancery Court of New Jersey against the Distillers Factors Corporation by Transcontinental and Western Air Inc., a creditor of such corporation, seeking the immediate appointment of an "equity or custodial receiver" pending the final hearing in the matter, and the appointment of a permanent "receiver for the creditors and stockholders" of the corporation, and an injunction enjoining the corporation and its officers and agents from exercising any of its privileges or franchises, from collecting its debts, or transferring any of its property except to a receiver appointed by the Court. On the same day, November 17, 1947, the Court appointed a custodial receiver of the corporation. On November 24, 1947 the Court made an order in the receivership proceeding authorizing the custodial receiver to employ I. M. Pogash to conduct such audit of the books of the corporation *17 and an examination of the conduct of its business operations as the receiver shall direct. On December 22, 1947, the Court made a final decree in such proceeding adjudging that the corporation was insolvent and appointing Joseph M. Jacobs receiver, in whom was vested title to all of the property of Distillers. The balance sheet of Distillers Factors Corporation as of January 31, 1947 as prepared by Pogash, the court-appointed accountant for the receiver of the corporation, from the books of the corporation and other information available to him, discloses an excess of liabilities over assets of $1,191,245.43, including as a liability the Government's federal income and excess profits tax claim in the amount of $1,037,207.73. Such balance sheet discloses an excess of liabilities over assets of $154,037.70, after excluding the entire amount of the Government's federal income and excess profits tax claim. The balance sheet of the corporation as of December 31, 1947, together with a schedule of loans payable and other "payables" as prepared by Pogash from the books of the corporation did not reflect any liability to petitioner. A statement of the liabilities of the corporation as *18 of October 31, 1947 prepared from the books of the corporation by Pogash did not reflect any account in the name of the petitioner nor did it reflect any obligation of the corporation to deliver any securities or stock to petitioner. The trial balance as ofseptember 30, 1947 prepared by Pogash from the books of the corporation did not reflect any credit balance due to petitioner. The trial balance as of June 30, 1947, prepared by Nowak, an internal revenue agent, from the general ledger of the corporation showed no account in the petitioner's name, although it included every account shown in the general ledger. Harry J. Weiner was the principal stockholder of Distillers and Israel Needleman its general manager. Weiner and Needleman were convicted in the United States District Court for the Western District of Louisiana in February 1947 for the crime of selling liquor at over-ceiling prices, and both were sentenced to prison. Weiner and the corporation were convicted on December 29, 1947 in th United States District Court for the Southern District of New York for a check kiting transaction involving a $175,000 check given Manufacturers Trust Company of New York. Opinion Petitioner, *19 upon his 1948 income tax return, took a deduction which he explained in an attached memorandum: "Loans to Distillers Factors Corporation, New York City $38,033.33. Corporation went bankrupt April 1948." Respondent disallowed this deduction and petitioner alleged in his petition that "he advanced to Distillers Factors, Inc., * * * an open account, sums totalling $38,033.33. The advances were at all times made with the understanding by and between the parties that they constituted loans by the Petitioner, Rubin Uslander, to Distillers Factors, Inc. They were so treated by the corporation and were reflected as loans on the books and records of the corporation." There were other allegations in the petition to the general effect that, along with his business of an accounting firm, petitioner engaged in extensive promotional activities involving his making loans to, or providing loans for, numerous businesses. The petitioner alleged the total of $38,033.33 became a business bad debt in 1948 and allowable as a deduction under section 23(k), I.R.C. of 1939, and "Alternatively, said advances * * * in the amount of $38,033.33 constituted losses in a transaction entered into for profit, or *20 alternatively, losses incurred in a trade or business carried on by the Petitioner, * * * and are allowable as a deduction under Section 23(e) of the Internal Revenue Code of 1939." Petitioner kept no books and records recording his purported promotional and loaning activities. He argues the allegations of his petition are established by his story of his extensive loan operations, generally to the clients of his accounting firm, and evidence of four specific transactions involving Distillers. The evidence of his extensive loan operations, which we will call his promotional activities, consisted of his story that he made such loans to Distillers and many other businesses. Sometimes he produced his canceled checks given to various firms and as he looked at each check he would merely state whether it represented a loan or a capital investment. He testified he had loaned as much as $200,000 to Distillers in about a 2-year period prior to September 1947 and he did this in numerous transactions without any notes and without interest merely for the purpose of retaining Distillers as a client of his accounting firm (a $5,000 a year accounting client) and for the purpose of having Distillers *21 recommend his accounting firm to others. This certified public accountant who says he devoted more than 50 per cent of his time to promotional activities, loaning hundreds of thousands of dollars a year in this branch of his business, preferred to leave the numerous transactions which he said that part of his business entailed, completely unrecorded. In answer to respondent's argument based on petitioner's lack of books and records he makes the shocking statement that such "contemporaneous memoranda would be self-serving and of no probative value with respect to the advances made." This, from a certified public accountant, who, of all business and professional men, should know the importance and utility of books and records that record business transactions. It is true that, with no books and records, a participant in business transactions can speak quite freely and it appears to us this is an advantage petitioner seized in this case. He argues now that his case is established by his story of four transactions but the trouble with his case is we consider most all of his testimony unworthy of belief. Before taking up the four specific transactions, we should say one thing more about *22 books and records. Since petitioner stated in his income tax return that the deduction was for loans to Distillers, that were rendered uncollectible in 1948, and since he or his accountancy firm handled Distillers' accountancy work, he was, of course, asked if he had seen an account on the general ledger of Distillers in his name showing an amount due him in the sum of $38,033.33. He replied in the affirmative. The books and records of Distillers had been destroyed, but these books had been audited and detailed reports had been made of what they reflected with respect to loans and liabilities of Distillers. An internal revenue agent and the auditor appointed by the State Court in the State Court receivership of Distillers in the fall of 1947 had audited these books. Their audit reports are in evidence and they show there was no account in petitioner's name on the books of Distillers and both of the makers of the reports testified they saw no account in petitioner's name on the books of Distillers. We prefer to believe the auditors to the effect that the books of Distillers reflected no account due petitioner. Petitioner's entire case in support of his claimed payments to Distillers *23 begins with his oral testimony that he made the payments to Distillers and they were not repaid. According to his story, he became the accountant for Distillers in late 1945 or early 1946. Harry J. Weiner was the principal stockholder of Distillers and Israel Needleman its general manager. It was petitioner's story that almost immediately he embarked on a practice of engaging in check exchange transactions with Distillers, whereby he would give Distillers his personal check for a certain amount and Distillers would give him its check in the same amount, which, according to the understanding, he would hold, as he said, "as long as they needed the money." It was petitioner's story that the total sum of $38,033.33 was made up of four items. The first is a $5,000 item. It was petitioner's story that in July 1946 he brought Weiner in touch with the Lyman interests in California who had some whiskey to sell and as a result, Weiner bought for Distillers 6,000 barrels of whiskey and gave petitioner Distillers' check for $5,000 dated July 19, 1946. An uncashed check of Distillers to petitioner dated July 19, 1946, in the sum of $5,000, is in evidence and it was petitioner's story that in *24 some manner this uncashed check evidenced a loan by him to Distillers. When he was asked to explain a notation on the check: "Commission Re: 6000 bbls.", he explained the check represented a commission due him from the purchaser in the sale transaction. When he was then asked the obvious question of how, since he was a cash basis taxpayer, an unpaid commission earned in 1946 could ever become a bad debt in 1948, he said he remembered he had included the unpaid $5,000 commission in his 1946 income. He did not bother to show his 1946 return. We are asked to believe that this certified public accountant who admittedly reported his income on the cash basis, remembered in 1958 that he had included in his 1946 income tax return a $5,000 commission he had earned in July of 1946 that was never paid. The second item is $7,500. It was petitioner's story that on August 19, 1946, he loaned Distillers $7,500. Petitioner's canceled check to Distillers with that date and for that sum is in evidence. There is also the uncashed check of Distillers to petitioner on August 19, 1946 for $7,500. These two checks, according to petitioner's "best recollection" represent a check exchange transaction where *25 he emerged holding Distillers' check to be cashed whenever Distillers felt like it could spare the money. Petitioner says he is corroborated by Needleman as to this transaction being a loan. Needleman knew nothing at all about the specific transaction. He testified generally that petitioner did often engage in check exchange transactions with Distillers but he said in such transactions Distillers gave a post dated check, not a check dated the same day as petitioner's check, as is the case with respect to this item. The third item is $12,200. Petitioner told a rambling, implausible, complicated story about this item. Distillers had been doing business with a corporation named Publiker Industries, Inc. and when stock of that company was offered to the public an allotment was made to Distillers. Distillers allotted 400 shares of its allotment to petitioner. Petitioner made a verbal deal with a man named Ravener whereby he and Ravener would buy the stock at a sale price of around $30 a share. He said they were to share equally in the purchase and in the profits and losses. They each gave their checks to Distillers for the 400 shares of Publiker Industries, Inc. stock. There is in evidence *26 a page of petitioner's book of check stubs which shows a pencil insertion between the check stubs numbered 2019 (May 7, 1946) and 2020 (May 10, 1946), the first word of which is not easily read but it probably is "Purch of Publiker 7200. -." Petitioner states this is the record of the check which he said was to Distillers which he could not find but that he gave it for the purchase of the Publiker stock and that Ravener gave his check to Distillers for $5,000. Afterwards, Ravener gave him $1,100 so they each had $6,100 in the deal. The story goes on: the stock certificates were not delivered by Distillers; petitioner considered it was all his fault because he had trusted Distillers, so he voluntarily paid Ravener his $6,100 (who, incidentally, had agreed to share losses) and petitioner ended up with a $12,200 loss. The auditors who, as previously stated, audited Distillers' books, found nothing therein to the effect that it owed delivery of any stock to petitioner. The fourth item is $13,333.33 and it is about as complicated as the third and it rests on no documentary evidence. Without delving too deeply into the story, it seems that petitioner, Weiner, and a man named Bank, had *27 stock in a corporation known as Cosmo Records, which a company named Gillespie and Company purchased, giving the owners two checks, one for $5,000 and one for $20,000. Our story has only to do with the $20,000 check given some time in the "middle of 1946" and made payable to petitioner, Bank and Weiner. Petitioner stated they each had a third interest in this check but "Mr. Bank and I had an understanding, he owed me some money as a result of which he endorsed over his third interest in this check to me. I then endorsed the check and I loaned to Distillers Factors through Harry J. Weiner our interest in the check which made it a loan of $13,333." Bank was an officer of Cosmo Records. His version of this item was that he endorsed the $20,000 check from Gillespie and Company as one of the three payees. He said that at that time he owed petitioner about $8,000. He did not specifically say he assigned his one-third interest in the check to petitioner but he endorsed it and he seemed to admit petitioner became the owner of a two-thirds interest in the check but then he added that after petitioner endorsed it, it was all turned over to Weiner, the other payee, who then lent the entire *28 proceeds of the check to Cosmo Records, the corporation of which he, Bank, was an officer. If he is to be believed, the $13,333.33 representing petitioner's two-thirds interest in the $20,000 check was never loaned to Distillers at all. In our opinion, the vague, unreal testimony of petitioner is utterly unworthy of belief. It is an apparent effort to relate the few scraps of documentary evidence to stories of transactions which would make an end result of overall indebtedness or losses in the amount claimed by him on his 1948 return. The untruths start with petitioner's statement that his only interest in his dealings with Distillers was to retain it as a client and secure its recommendation. It is apparent from this record that Distillers was dedicated to circumventing O.P.A. regulations with respect to whiskey sales. Shortly after petitioner's firm became the accountant for Distillers, its manager and principal stockholder were convicted of O.P.A. violations and the corporation and principal stockholder convicted of a check kiting transaction. Petitioner's version of check exchanges would not be what is commonly known as check kiting operations but his testimony of numerous check *29 exchanges totaling probably $200,000 in a short period of less than two years, shows an involvment by petitioner in Distillers' check maneuvers that bespeaks something more than an interest in retaining a $5,000 a year client for his accountancy firm. We hold, in the light of the whole record, that petitioner failed to discharge his burden of establishing by credible evidence that he made loans to Distillers in 1946 totaling $38,033.33 or that he incurred any losses in transactions entered into for profit or in a trade or business carried on by petitioner within the meaning of section 23(e) of the Internal Revenue Code of 1939. We need not explore the other questions presented but the entire record would warrant a holding that if a debt in favor of petitioner was created in 1946 in the amount of $38,033.33, it became worthless prior to 1948. Decision will be entered for the respondent.